Morris KAGAN et al., Appellants,

v.

Elizabeth MOODY et al., Appellees.

No. 13091.

Court of Civil Appeals of Texas.

Houston.

Dec. 19, 1957.

Motions for Rehearing Denied
Jan. 16, 1958.

Dow & Dow, Harry Dow and Melvin Dow, Houston, for appellant.

McClain & Harrell and Cam Harrell, Conroe, Looney, Clark, Moorhead & Mathews and R. D. Moorhead, Austin, for appellee Laura Beth Moody.

Darden & Fowler, William E. Fowler and George B. Darden, Conroe, Hart, Brown, Sparks & Erwin and J. H. Hart, Austin, for appellee Elizabeth Moody.

WERLEIN, Justice.

This suit was brought by appellants for specific performance of a contract for the sale of certain real estate. The contract was signed by Morris Kagan and Israel Rudy as buyers, and by Elizabeth Moody, a feme sole, individually and as attorney in fact and trustee for Laura Beth Moody, a feme sole, as sellers. The chain of title into the appellants as buyers was, according

to the findings of fact of the trial court, as follows:

"(a) Quit-claim from Elizabeth Moody to Laura Beth Moody, dated February 1, 1950;

"(b) Power of Attorney from Laura Beth Moody to Elizabeth Moody, dated February 3, 1950;

"(c) Quit-claim (specifically incorporating the Trust herein) from Laura Beth Moody to Elizabeth Moody, Trustee, dated April 17, 1953;

"(d) Contract of sale from Elizabeth Moody, individually and as Attorney-in-fact and Trustee for Laura Beth Moody to M. Kagan and I. Rudy, dated June 29, 1954."

Appellants contend that under the Texas Trust Act they were not required to make any investigation as to the power of Elizabeth Moody, trustee, to execute the contract of sale, and that it was not necessary for the beneficiary of the trust, Laura Beth Moody, to join in the execution of a conveyance of the property in question. The deed in trust dated April 17, 1953, from Laura Beth Moody to Elizabeth Moody, Trustee, reads as follows:

State of Texas } Know All Men
County of Harris } by These Presents:

That I, Laura Beth Moody, an unmarried woman over twenty-one years of age, of Harris County, Texas, for Ten Dollars ($10.00) cash and other good and valuable considerations to me in hand paid by Mrs. Elizabeth Moody of Harris County, Texas, as Trustee, which considerations expressly include the full and proper performance by said Elizabeth Moody, Trustee, of all of the various duties and responsibilities defined in that certain Creation of Trust and Trust Agreement of even date herewith, between said Laura Beth Moody, as Grantor, and Mrs. Elizabeth Moody, as Trustee, reference here being made to said Creation of Trust and Trust Agreement for all purposes, have granted and conveyed, and do hereby grant and convey, unto Mrs. Elizabeth Moody, Trustee, all of my property and estate whatsoever and wheresoever, Real, personal and mixed, tangible and intangible, which I own or have power to use or dispose of, and in particular but not by way of limitation, all property, real, personal and mixed, located in the State of Texas, State of California and the State of Mississippi.

To have and to hold unto the said Mrs. Elizabeth Moody, Trustee, in trust for the purposes and subject to all of the various terms and provisions specified in said Creation of Trust and Trust Agreement of even date herewith, to which reference has hereinabove been made, and I do hereby bind myself, my heirs and person—representatives, to warrant and forever defend unto said Mrs. Elizabeth Moody, Trustee, and her successors in trust, subject to all valid and existing liens and encumbrances now of record and affecting such properties, the title to the properties hereinabove described against the claims of any and all persons whomsoever claiming or to claim the same or any part thereof.

In Testimony Whereof witness my hand at Houston, Texas, this 17 day of April, 1953.

/S/ Laura Beth Moody

(Acknowledgment)

The creation of trust and trust agreement referred to in said deed was executed the same day as the deed, but was never recorded. It gave Elizabeth Moody power to convey, encumber or otherwise dispose of the property and to invest and reinvest the revenues therefrom. On the same day that the foregoing deed and trust agreement were executed, another instrument referred to as a "codicil", which was never recorded and never referred to in any instrument in the chain of title, was executed at the home of the Moodys some hours after the execution of the April 17, 1953, deed and trust agreement. This so-called codicil, which was typed on one sheet of

paper and was not acknowledged, purported to be an amendment to the formal trust instrument and undertook to limit the trustee's power to convey real estate by requiring the joinder of Laura Beth Moody, or the trust officer of the Houston Bank & Trust Company, Ross Bennett, in transactions "involving more than $5,000.00 and five years duration, such as leases, rentals, land improvements or sales * * * "

The first three instruments in the alleged chain of title of appellants were duly recorded in the office of the County Clerk of Montgomery County, Texas, prior to the execution of the contract of sale dated June 29, 1954, and the contract of sale was subsequently recorded in Montgomery County.

The trial court found that neither of the defendants, nor any other person, had ever told either of the appellants that Laura Beth Moody as beneficiary of a trust or in any other capacity had to consent to or join in the execution of any conveyance of the property in question in order for such conveyance to be valid, and neither of the appellants had actual knowledge of any such requirement or agreement. Both Morris Kagan and Israel Rudy acted in good faith at all times material to the transaction in question, and neither of them was charged with wrongdoing or overreaching.

The trial court further found that the deed from Laura Beth Moody to Elizabeth Moody as trustee, dated April 17, 1953, expressly incorporates the trust agreement therein by specific reference, and that the contract of sale beween Elizabeth Moody as trustee and appellants dated June 29, 1954, expressly states that Elizabeth Moody is "the trustee for Laura Beth Moody", and that the chain of title under which appellants claim was sufficient to put plaintiffs on inquiry and charge them with notice of the trust and its beneficiary, and of such facts as might have been disclosed by pursuing such inquiry with reasonable diligence.

The court rendered judgment in favor of appellees, denying specific performance and decreeing that the appellants take nothing, and that the contract of sale be cancelled and that the sum of $5,000 which had been deposited as earnest money by the appellants, as provided in the contract of sale, be released to them. Appellants in due course perfected their appeal, and the case is now before this Court for review.

There appears to be no dispute as to the facts in the case, and the only question before this Court is one of law to determine whether the joinder of Laura Beth Moody was required on the contract of sale in order to support a decree of specific performance binding upon her and Elizabeth Moody and validly vesting title in appellants.

Appellants' first point of error presents the proposition that under Article 7425a (7425b-8), Vernon's Ann.Texas St., Elizabeth Moody as trustee had authority to execute a valid deed conveying title to the property in question, or a valid contract of sale thereof, without the joinder of Laura Beth Moody in such deed or contract of sale.

Article 7425a and Article 7425b-8 are identical in language, and read as follows:

"Where a trust is created, but is not contained or declared in the conveyance to the trustee, or when a conveyance or transfer is made to a trustee without disclosing the names of the beneficiary, or beneficiaries, the trustee shall be held to have the power to convey or transfer or encumber the title and whenever he shall execute and deliver a conveyance or transfer or encumbrance of such property, as trustee, such conveyance or transfer or encumbrance shall not thereafter be questioned by any one claiming as a beneficiary under such trust or by any one claiming by, through, or under an undisclosed beneficiary, provided that none of the trust property in the hands

of said trustee shall be liable for personal obligations of said trustee. (Article 7425a, R.C.S. of Texas) Acts 1943, 48th Leg., p. 232, ch. 148, § 8."

It is apparent from reading this statute that the trustee is given power to convey or transfer or encumber the title to real estate, as trustee, when a trust is created but is not contained or declared in the conveyance to the trustee, or when a conveyance or transfer is made to a trustee without disclosing the names of the beneficiary, or beneficiaries.

Appellants contend that the deed in trust of April 17, 1953, from Laura Beth Moody to Elizabeth Moody, Trustee, does not disclose the name of the beneficiary, nor does it contain or declare the trust that is created. Appellees, on the other hand, contend that the trust is declared in such deed, or, in any event, that it is incorporated therein by reference.

 The deed of April 17, 1953, from Laura Beth Moody to Elizabeth Moody, Trustee, and the deed of February 1, 1950, from Elizabeth Moody to Laura Beth Moody are, respectively, a general warranty deed and a special warranty deed, rather than quit-claim deeds, in that they do not purport to convey only the right, title and interest of the grantor in and to the subject property, but actually convey the property. The expression in the deed of February 1, 1950, "owned by me", referring to the property, and the pronoun "my" in the deed of April 17, 1953, as used in the clause, "all of my property and estate whatsoever and wheresoever, real, personal and mixed, tangible and intangible, which I own or have power to use or dispose of", are words of description. Instead of describing the property by metes and bounds, the grantor in each instance includes in the conveyance all the property that the grantor owns and not merely her right, title and interest in such property. See Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 3 A.L.R. 940.

In the deed in trust, the property is conveyed to Mrs. Elizabeth Moody, Trustee. The first paragraph of the deed in part recites:

"* * * for Ten Dollars ($10.00) cash and other good and valuable considerations to me in hand paid by Mrs. Elizabeth Moody of Harris County, Texas, as Trustee, which considerations expressly include the full and proper performance by said Elizabeth Moody, Trustee, of all of the various duties and responsibilities defined in that certain Creation of Trust and Trust Agreement of even date herewith, between said Laura Beth Moody, as Grantor, and Mrs. Elizabeth Moody, as Trustee, reference here being made to said Creation of Trust and Trust Agreement for all purposes * * *"

In the habendum clause, it is provided, "* * * unto the said Mrs. Elizabeth Moody, Trustee, in trust for the purposes and subject to all of the various terms and provisions specified in said Creation of Trust and Trust Agreement of even date herewith, to which reference has hereinabove been made * * *" The warranty is to "Mrs. Elizabeth Moody, Trustee, and her successors in trust, subject to all valid and existing liens and encumbrances now of record and affecting such properties * * *"

 The above quoted provisions refer to the trust agreement between Laura Beth Moody and Elizabeth Moody, but the trust is not contained in the deed, nor is the name of the beneficiary recited therein. We are of the opinion that such references are not sufficient to declare the trust as that term is used in Article 7425b-8. The deed in trust refers to a trust that has been created, but it does no more than give the name of the trustee and refer in general language to performance by her of the various duties and responsibilities defined in the trust agreement but which are not defined in any recorded instrument. Article 7425b-8 does not state that a reference to

the trust is sufficient or adequate to remove the transaction from out of the Texas Trust Act. The trust must be *contained or declared* in the conveyance to the trustee. In our opinion, the deed in trust must declare with certainty the essential terms and purposes of the trust, disclose the names of the beneficiary, or beneficiaries, and recite not only the subject and object of the trust, but also the functions and duties of the trustee. See 89 C.J.S. Trusts § 42, pages 771–772, where it is stated:

"The declaration must contain sufficient words to create the trust, and it must embody all the essential elements of a trust. It must express the intention to create a trust * * * and state with certainty the terms, subject, persons, and object of the trust; and it has been stated that the trustee must be authorized and directed to perform certain duties and assume certain obligations."

We believe that a trust is not declared, within the meaning of Article 7425b–8, unless the language used is essentially that which is required for the declaration of a trust by a trustee.

Appellees contend, however, that at the time appellants and Mrs. Elizabeth Moody, individually and as trustee and attorney in fact for Laura Beth Moody, executed the contract of sale in question, appellants then were advised that Elizabeth Moody was trustee for Laura Beth Moody. It is doubtless true that at such time appellants learned that the said Elizabeth Moody was trustee for Laura Beth Moody, but they still did not know and were not advised of the terms of the trust. Certainly, the trust was not contained or declared in the contract of sale between said parties. Actually, appellants knew no more than they did at the time they began to negotiate for the property, other than that the beneficiary in the trust agreement referred to in the deed of trust was, in fact, Laura Beth Moody, daughter of Mrs. Elizabeth Moody, the trustee.

Appellees strenuously contend that the appellants were put on notice of the recitals in the recorded chain of title and were therefore required to make an investigation and to determine the terms of the trust agreement. They have cited numerous cases to the effect that all persons are charged with notice of everything revealed by any document or instrument in the chain of title under which they claim an interest in land. We are in accord with the general propositions of law contained in the decisions cited by appellees. In the present case, however, we are dealing with the Texas Trust Act, enacted in 1943. Under this act, the prospective purchaser can purchase land from a trustee without making an investigation to determine the trustee's authority to sell, unless the deed in trust (1) contains or declares the trust, *and* (2) names the beneficiary. The deed in trust in the instant case does neither.

The case of Thlocco v. Magnolia Petroleum Co., 5 Cir., 1944, 141 F.2d 934, 937, certiorari denied 323 U.S. 785, 65 S.Ct. 276, 89 L.Ed. 627, correctly construes the Texas Trust Act and clearly shows that the purpose of the Act was to protect persons dealing with trustees and to relieve them of the necessity of investigating at their peril the duties and powers of the trustee contained in some unrecorded instrument. The court stated:

"The statute governing dealings with trustees expressly provides that persons may deal with a trustee of this sort without inquiring as to the beneficiaries and without concern or responsibility as to the application of the proceeds. If this statute applied, the plaintiff was entitled to deal with the trustee herein in respect of the sale of the lease, whether he purported to be acting for himself or for Shunatona, his lessee, in full reliance upon his power to act, and with complete freedom of accountability to the beneficiary."

In the Thlocco case there was a recorded deed, which deed did not set forth the full trust, coupled with an unrecorded trust instrument. In the instant case, we have the same situation, to wit: a deed in trust duly recorded, and an unrecorded trust agreement, thus facilitating the handling of the property by the trustee and eliminating the necessity of an investigation by the prospective purchaser of unrecorded instruments.

The second recital in the trust agreement between Elizabeth Moody and Laura Beth Moody reads as follows:

"Whereas, it is the desire of the grantor and grantee in said Deed in Trust of even date herewith that the various conditions of the Trust Estate created thereby and the various powers, duties, authorities and responsibilities of the Trustee therein be fully and specifically provided in an instrument separate from said Deed in Trust and that such Deed in Trust alone of the two instruments be filed for record in the various counties wherein such properties are located; and, * * *"

It would seem, therefore, that the appellees were intentionally seeking the advantages Article 7425a offers in enabling the trustee to deal freely with the property. However, subsequent to the execution of said contract of sale, the appellees for some reason, possibly increase in the value of the property, have refused to comply with the terms of the agreement on the ground that under the so-called codicil attached to the trust agreement some hours after its execution, the signature of the beneficiary was required.

Appellees have cited a number of cases, including the case of Woodall v. Adams, Tex.Civ.App., Galveston, 1928, 7 S.W.2d 922, no writ history. This case involved a complicated fact situation in which there was a sale of property under a deed of trust, by the trustee in the deed of trust. The Texas Trust Act does not include sales

under deeds of trust. Article 7425b-2. The sale under the deed of trust was to one Carrington. The word "trustee" was not added to his name. He was to buy in the property for Mrs. Adams, who owned the $10,300 note foreclosed, but instead took title in his own name. There was evidence that Woodall, to whom Carrington conveyed the property, knew of the trust and purchased the property under suspicious circumstances for $250, although the deed to him recited a consideration of $1,000. Mrs. Adams received nothing. Under these facts, this Court, prior to the enactment of the Texas Trust Act, held that the act invoked [Art. 7425a, 1925] was enacted for the purpose only of protecting persons who might in good faith, and without notice or knowledge, for value, purchase land from one holding the apparent legal title, but who, in fact, hold such title in trust for an undisclosed principal. In the present case, there are no suspicious circumstances surrounding the transaction and no contention that appellants have not acted in utmost good faith.

Appellees contend, however, that the appellants were not bona fide purchasers, not only because claiming under alleged quitclaims, but because they had notice that Laura Beth Moody was the beneficiary of the trust at the time the contract of sale was entered into, and also because the down payment on the purchase money under the contract of sale has not been paid. It is true that the only money paid by appellants was the $5,000 earnest money, which was turned over to the title company to be held in escrow and to be applied upon the down payment of the purchase money in the event the title was found good and the transaction was consummated. In this connection it should be stated that the appellants have waived any and all defects in the title, and have performed fully and faithfully every requirement on their part, and have been and are now able, ready and willing to consummate the purchase of the property, but have been prevented by appellees from doing so.

The appellants have parted with the $5,000 earnest money, knowing that if they did not comply with their part of the contract of sale such amount would be forfeited. They changed their position to that extent, and while technically they are not bona fide purchasers for value of the property since the purchase money has not been paid and the property has not been conveyed to them, they did act in good faith when they deposited the $5,000, and insofar as they are concerned the transaction was a bona fide one. They, having complied fully with the terms of the contract on their part, now insist that they are entitled to specific performance on the part of the appellees, as provided in said contract of sale. See Adams v. Abbott, 1952, 151 Tex. 601, 254 S.W.2d 78.

Appellees also contend that since there has been no conveyance of the property in question to appellants, they are not bona fide purchasers thereof, and the Texas Trust Act is not applicable. It will be noted that Article 7425b–8 not only states that the trustee shall be held to have the power to convey or transfer the property subject to the trust, but expressly provides, "or encumber the title * * * such conveyance or transfer or encumbrance shall not thereafter be questioned by anyone claiming as a beneficiary under such trust * * *."

It is our opinion that the Trust Act applies in the instant case for the reason that when the contract of sale was executed the trustee did encumber the property in question. Webster's New Collegiate Dictionary defines "encumber" as follows: "To place a burden upon; esp., to load with debts, or other legal claims." Black's Law Dictionary defines the term, "To encumber land is to make it subject to a charge or liability."

The Texas Trust Act would be largely defeated if it were limited to conveyances of the property in question to bona fide purchasers. The word "encumber" in Article 7425b–8 must have some

meaning and is broad enough to include a claim arising from the execution by appellants and appellees of the contract of sale in question.

In the case of Bauer v. Bauer, 136 Neb. 329, 285 N.W. 565, 568, Alec Bauer held certain real estate in trust for his mother. He executed to a third party a farm lease containing the customary terms of that form of lease. The title was in Alec Bauer, the son, and there was nothing of record to show the name of the beneficiary and no declaration of the terms of the trust was recorded. The court held that the provisions of the Trust Act, Sec. 76–265, Comp. of St.1929, applied, saying:

"The primary purpose of this statute, of course, was to avoid title uncertainties and to facilitate conveyances, but there is nothing in its language or salutary object that requires a narrow construction, restricting its application to conveyances of the trustee's entire estate and holding that grants of lesser estates and interests are not within its operation."

There is nothing in the Texas Trust Act that would require that the Act be limited to conveyances, especially since Article 7425b–8 includes encumbrances on the title of the property.

In the case of Willys-Overland, Inc. v. Blake, 97 Fla. 626, 121 So. 884, the lands involved in the appeal were conveyed by one M. P. Lawrence and wife to Earl B. Renwick, Trustee, with full power to sell, convey, transfer and encumber such real estate. There did not appear of record at the time of the recording of such conveyance a declaration of trust by the grantee so described declaring the purposes of the trust, if any, or that the real estate was held other than for the benefits of the grantee. The court held that the claimants of the beneficial interest in the property possessed no rights that could be interposed against the right of a judgment creditor of the grantee, without any other notice of the beneficial owners' rights, to subject

the property to sale and execution for the grantee's obligation.

Scott on Trusts, 2d Ed., Sec. 297.3, p. 2216, makes this pertinent comment with reference to trust statutes:

"In order to make the land *salable*, statutes have been enacted in several states which provide that where the word 'trustee' is added to the name of the grantee in a deed of conveyance of land in which no beneficiaries are named, and the purposes of the trust are not set forth in the deed and no other instrument showing a declaration of trust is recorded, a purchaser of the land takes it free of any trust."

Bogert in his treatise on Trusts, 4 Bogert, Trusts and Trustees, Sec. 893, p. 537, states:

"Such statutes are of great aid to title searchers and title guaranty companies in clearing titles."

In view of the fact at the time of executing the contract of sale in question the appellants were not advised of the terms and purposes of the trust and the same were not contained or declared in the deed in trust of April 17, 1953, or in the contract of sale, it is our conclusion that the appellants had the right to rely upon the powers of the trustee, Elizabeth Moody, to enter into a binding contract of sale of the property in question, and that it was not necessary for them to make any independent investigation to determine the nature and extent of her powers with respect thereto.

Appellants' second point is to the effect that under the language of Article 7425b-25, apart from Article 7425a (7425b-8), the so-called letter codicil which was not recorded or referred to in any recorded instrument and of which appellants had no notice, does not defeat appellants' right to specific performance of the contract of sale. They contend that the so-called codicil did not constitute an effective amendment of the trust even as between all of the then interested parties, and that if it was effective as between all interested parties, it did not defeat the rights of third parties, and in particular it did not bind the appellants since it was not incorporated by reference in the recorded deed in trust.

Article 7425b-22 provides as follows:

"The trustor of any trust affected by this Act may, by provisions in the instrument creating the trust, or by an amendment of the trust *if the trustor reserved the power to amend the trust,* * * * alter or deny to his trustee any or all of the privileges and powers conferred upon the trustee by .this Act; * * *." (Emphasis ours.)

There is nothing in the trust agreement which gives the beneficiary the right to revoke the trust in whole or in part, or to amend it. The trustee, Elizabeth Moody, is given the exclusive right to terminate the trust. The trust agreement refers to the "irrevocable terms" of the instrument creating the trust, and further provides that the trustee's powers are "qualified only by the provisions of this instrument", and further provides that the trust "cannot be modified except in accordance with the provisions" as set out in Article VI of such instrument. Article VI does not provide for any modification of the trust agreement during the life of Laura Beth Moody. Even though the so-called letter codicil was effective as between the trustee and the beneficiary, a point upon which we do not pass, it is the opinion of this Court that such codicil was not effective as between appellants and appellees in the present case.

A trustee is given broad powers under the Texas Trust Act in the absence of limiting provisions in the instrument creating the trust. See Article 7425b-25, V.A. T.S. The trust agreement in the instant case gives the trustee power to sell land and the statute gives the trustee the power to convey or transfer or encumber the title to the trust property, grant options, sell real or personal property at public auction or at

private sale for cash or upon credit secured by liens upon such property.

We quote the following statement from Scott on Trusts:

"Where the trust instrument gives the trustees a general power of sale, a purchaser of the trust property is protected although in a separate instrument the settlor imposed restrictions upon the trustee and the sale was made in violation of these restrictions, if the purchaser had no notice of the restrictions." 3 Scott on Trusts, 2d Ed., Sec. 297.4, p. 2219.

See Huntoon v. Southern Trust & Commerce Bank, 1930, 107 Cal.App. 121, 290 P. 86, cited by Scott.

In the present case, the court found that the appellants had no knowledge of the so-called codicil which undertook to limit the powers of the trustee, and there was no reference to such codicil in any of the recorded instruments. Moreover, at the time the deed in trust was executed, the so-called codicil was not in existence. The deed in trust referred to the trust agreement, but did not refer to any amendment or modification thereof. The trust agreement which was referred to give the trustee the power of sale without any limitation. Even if it can be said that the appellants should have informed themselves concerning the terms of the trust agreement since it was referred to in the deed of trust, they would certainly not be required to inform themselves concerning an unrecorded codicil executed subsequent to the deed in trust and in no manner referred to or incorporated in such deed in trust.

Appellants' third point of error is to the effect that Elizabeth Moody as attorney in fact for Laura Beth Moody, under the power of attorney dated February 3, 1950, had authority to execute a deed or contract of sale in behalf of Laura Beth Moody covering the land in question. The trial court found that the power of attorney of February 3, 1950, had not been expressly revoked by any instrument in writing. The court further found that such power of attorney had never been ratified after the date of the trust agreement, April 17, 1953, and that it and the trust agreement and codicil thereto were conflicting and were not consistent with each other. The court concluded in his conclusions of law that the trust agreement and codicil thereto were inconsistent with the power of attorney of February 3, 1950, and resulted in revocation of such power of attorney.

We cannot agree with the court's conclusion that the trust agreement and codicil thereto had the effect of revoking the power of attorney previously given Mrs. Elizabeth Moody by her daughter, Laura Beth Moody. Appellees contend that the power of attorney was revoked by the deed in trust, since by execution of such deed and the conveyance of the property to the mother as trustee, there was nothing left in Laura Beth Moody upon which the power of attorney could operate. They refer to the case of Chenault v. Quisenberry, 56 S.W. 410, 21 Ky.Law Rep. 1771, in which it was held that a power of attorney had been revoked by the owner's prior conveyance of the property. They also cite Donnan v. Adams, 30 Tex.Civ. App. 615, 71 S.W. 580, writ denied, in which case it was held the sale of the land by the owner revoked the agency.

The case of Chenault v. Quisenberry, supra, is distinguishable from the present case. In the Chenault case, relied upon by appellees, the owner of the property who had previously executed a power of attorney, conveyed the land to his agent as trustee and guardian of his son. Thus, he disposed of the property entirely and he had no further interest therein of any kind, so that a subsequent conveyance of the land by the agent under the power of attorney was void. In the instant case, the owner, Laura Beth Moody, conveyed the property in question to her mother, in trust. At the time the contract of sale was executed,

appellants knew and could rely upon the fact that the beneficial ownership of the property was in Laura Beth Moody, and that she had an interest in the property upon which the power of attorney could operate, thus permitting Elizabeth Moody to execute the contract of sale not only as trustee but also as attorney in fact for her daughter.

Moreover, it seems quite evident that Elizabeth Moody continued to regard herself as attorney in fact for Laura Beth Moody and also as her trustee without regard to the value of the property sold. The record shows that subsequent to the date of the trust agreement and codicil she executed an earnest money contract individually and as attorney in fact and trustee for Laura Beth Moody, reciting a consideration in excess of $149,000. She also executed a letter agreement covering other property, signing the same "Laura Beth Moody by Elizabeth Moody, trustee, attorney in fact". This transaction involved a lease for forty-five years at net rentals graduated over the lease term from $36,000 to $48,000 per annum. It appears, therefore, that the contract of sale in the present case is in keeping with previous transactions involving the trust property.

It is our conclusion that the contract of sale in question is binding upon the appellees and that specific performance of such contract would be in the interest of justice and fair dealing, in that the appellants have done everything required of them and are in no manner responsible for the refusal of appellees to proceed with closing the transaction. As far as the record indicates, the appellees have no valid reason for refusing to consummate the sale. We, therefore, hold that the contract of sale in question should be specifically enforced.

The judgment of the trial court is reversed and rendered and specific performance is granted the appellants of the contract of sale in question.

On Motion for Rehearing

We are of the opinion that this case was correctly decided in our opinion filed December 19, 1957. We have concluded on our own motion, however, that in view of the nature of the relief granted, it will be better procedure for this Court to reverse and remand the cause with instructions than to reverse and render the judgment, and our former opinion is reformed accordingly.

Therefore, this cause is reversed and remanded to the trial court with instructions to enter judgment in keeping with the opinion of this Court, in favor of appellants and against appellees, for specific performance in accordance with the terms of the contract of sale in question. Appellees' motions for rehearing are refused.